**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| LISA LEA BROSSETTE, ET AL. | CIVIL ACTION NO. 07-0888 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| SWIFT TRANSPORTATION, CO., INC., ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court are motions in limine filed by Plaintiffs and Defendants. As detailed below, this ruling addresses one of Plaintiffs' motions (Record Document 62), which is **GRANTED in part** and **DENIED in part**; and two of Defendants' motions (Record Documents 64 & 65), which are **DENIED**. Record Document 101, which corresponds to Defendants' re-filed General Motion in Limine; as well as Record Documents 105, 106, 107, and 108, which correspond to partially briefed expert motions in limine, remain pending.

**A.    Plaintiffs' Motions in Limine**

(The numbered subheadings below list items, referred to below as individual "motions," which Plaintiffs seek to prevent the Defense from introducing or referring to at trial. The numberings in this section correspond to Plaintiffs' numbering in Record Document 62. Except where indicated, all incidences of "Rule" or "Rules" throughout this ruling refer to the Federal Rules of Evidence.)

**1.    Any statement or Inference that a verdict for Plaintiffs would cause an increase in insurance premiums**

Defendants indicated that they do not oppose this motion. See Record Document 86, ¶ 1. Accordingly, Plaintiffs' motion numbered 1 is hereby **DENIED as moot**.

**2.    Any statement or inference that a source(s) other than Defendants has**

**paid Plaintiffs' medical and funeral bills**

Defendants indicated that they do not oppose this motion. See Record Document 86, ¶ 2. Accordingly, Plaintiffs' motion numbered 2 is hereby **DENIED as moot**.

**3 & 4. All of Plaintiff Lisa Brosette's medical records, including the records of Drs. Knecht, Mason, and Wheat, along with any evidence or testimony regarding the physical or mental condition of Lisa Brosette**

Plaintiffs' motions numbered three and four are **GRANTED**: Defendants oppose these motions, relying on the recent Louisiana Court of Appeal case of Prine v. Bailey, 42-282 (La. App. 2 Cir. 8/15/07); 964 So.2d 435, which involved a suit for wrongful death and survival as a result of alleged medical malpractice. In that case, the Court of Appeals for Louisiana's Second Circuit held that the "[r]ecords of mental health treatment by mental health professionals, such as psychiatrists and psychologists, are discoverable for defense against an element of the plaintiffs' claims" because the plaintiffs claimed mental anguish damages resulting from the loss of the deceased, thereby "relying on their mental conditions as part of their claims." Id. at 443.

To determine relevancy in this diversity case, this Court looks to Louisiana law. See Carter v. Massey-Ferguson, Inc., 716 F.2d 344, 347 (5th Cir. 1983). However, the court's ruling in Prine, which addressed the discoverability of mental health records, does not resolve the issued raised by these motions in limine. Information may be discoverable but inadmissible at trial: "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Moreover, this Court respectfully disagrees with the holding of

Prine. In this instance, Mrs. Brosette does not allege that she suffers from depression due to Mr. Brosette's death; she merely claims general damages for the ordinary mental anguish that any person would suffer after the loss of a spouse. See Record Document 93 at 1. Accordingly, evidence of Mrs. Brosette's mental health treatment is irrelevant and inadmissible under Rule 401. Likewise, Mrs. Brosette's physical condition and any medical treatment for physical ailments are irrelevant to her general claims of mental anguish. Id.

Defendants argue that Mrs. Brosette's mental health treatment is relevant to the lack of love and affection and marital discord she experienced with her husband. The Court notes that Mrs. Brosette has identified Dr. Millard Bienvenu ("Dr. Bienvenu"), a marriage counselor, as a will call witness. Should Mrs. Brosette "open the door" at trial by eliciting testimony from Dr. Bienvenu regarding her personal mental health or mental health treatment, Defendants may seek the Court's permission to introduce evidence regarding Mrs. Brosette's mental health condition and treatment.

**5.     Any evidence, statement, or inference regarding allegations that Plaintiff Lisa Brosette has dated men since her husband's death**

Plaintiffs' motion numbered five is **GRANTED**. As noted above, diversity cases such as this one are governed by Louisiana law, which "forbids evidence of remarriage in a suit seeking damages for the loss of a spouse." Calderera v. Eastern Airlines, Inc., 705 F.2d 778, 782 (5th Cir. 1988) (citations omitted); see also McFarland v. Illinois Cent. R.R. Co., 45428 (La. 2/15/61); 127 So.2d 183, 185-87. Underlying this well established rule is the rationale that "a right of action arises at the time of the death to recover just what was lost by it, and that the loss thus occasioned is none the less, even though the injured party

thereafter acquire [sic], through [her] own skill or industry, or the charity or affection of another, more than [s]he lost." Id. at 186 (citation omitted). In addition to evidence of remarriage, Louisiana courts have held that evidence of a surviving spouse's engagement to remarry following the death of a spouse is likewise inadmissible in a wrongful death suit. Jones v. Kansas City Southern R.R. Co., 20144 (La. 4/12/15); 68 So. 401, 405 (evidence of engagement of widow was irrelevant and immaterial, as the court could not assume that the engagement would result in marriage; nor could the court assume that the condition of the plaintiff would be improved if the marriage occurred), rev'd on other grounds, 241 U.S. 181 (1916 ); Hightower v. Dr. Pepper Bottling Co. of Shreveport, 9059 (La. App. 2 Cir. 10/30/59); 117 So.2d 642, 651-52 ("we have no hesitancy in holding that the engagement of a spouse . . . is completely irrelevant to the consideration of the damages to which such spouse is entitled").

Because Mrs. Brosette's cause of action arose at the time of her husband's death, her recovery may not be reduced by evidence that she succeeded in "acquir[ing] the . . . affection of another." See McFarland, 127 So.2d at 186. Defendants argue that this evidence should be admitted for the purposes of establishing that Mrs. Brosette was involved in romantic relationships with two men–Jeff Cooper and Henry Taylor–both before and after her husband's death. Defendants contend that evidence of the fact that these relationships continued after Mr. Brosette's death is probative of the fact that they existed before. This court concludes that the potential probative value of such evidence is slight, and, In light of its determination that such evidence is barred under Louisiana law, concludes that any potential probative value is substantially outweighed by the risk of unfair prejudice to Plaintiff. See Rule 403.

Defendants further argue that this evidence should be admissible to impeach Mrs. Brosette's credibility as a witness. Defendants claim that Mrs. Brosette "denied having an ongoing extra-marital affair with Jeff Cooper up to Mr. Brosette's death," Record Document 86 at 9, and present the Court with excerpts from Jeff Cooper's deposition testimony in which Defense counsel tried and failed to elicit an admission from Mr. Cooper that he and Lisa Brosette had sexual intercourse on more than one occasion. Id. at 10-11. Mr. Cooper's deposition testimony does not directly contradict Mrs. Brosette's testimony on this point. See id. at 9-11. Accordingly, evidence that Mrs. Brosette has dated men since her husband's death is not admissible for the purpose of impeachment (or for any other purpose).

**6.    Any evidence or argument referring to any criminal offenses committed by Plaintiff Michael Brosette**

Defendants indicated that they do not oppose this motion. See Record Document 86, ¶ 6. Accordingly, Plaintiffs' motion numbered 6 is hereby **DENIED as moot**.

**7.    Any evidence or argument referring to drug use by Plaintiff Michael Brosette**

Defendants indicated that they do not oppose this motion. See Record Document 86, ¶ 7. Accordingly, Plaintiffs' motion numbered 7 is hereby **DENIED as moot**.

**8 & 9. Any evidence, statement, or inference regarding: (1) an incident in which the Deceased allegedly had a physical altercation with a co-worker; and (2) the fact that the Deceased's employer referred the Deceased to anger management classes**

Plaintiffs' motions numbered 8 and 9 are **GRANTED**. Mr. Brosette's alleged physical altercation at work and referral to anger management classes are not relevant to any of Plaintiffs' allegations. To the extent that Defendants seek to introduce this evidence in order to establish that Mr. Brosette acted out of anger or impulsively on the date of the accident or in the course of his relationship with Mrs. Brosette, the evidence is inadmissible under Rule 404(a). To the extent that Defendants seek to introduce this evidence in order to explain how Mr. and Mrs. Brosette came to see marriage counselor Dr. Bienvenu for the first time, that fact is of no consequence to the determination of this action and is therefore not "relevant evidence" within the meaning of Rule 401.

Finally, Defendants contend that Dr. Bienvenu testified that during his first visit with the couple he believed that some marital tension existed, and that one contributing factor was Mr. Brosette's suspension from work as a result of the alleged incident at work. See Record Document 86, p. 13. However, Defendants failed to attach this testimony to their opposition brief. Even if Defendants can substantiate this claim, the evidence is only marginally relevant to Mrs. Brosette's claim for loss of consortium. Because, as discussed above, the evidence is inadmissible under Rule 404(a), and, because its introduction would entail a substantial danger of unfair prejudice to Plaintiffs' claims, it is inadmissible under Rule 403.

**10. An August 4, 2006 ambulance run report containing a statement regarding the speed of the collision**

Plaintiffs' motion numbered 10 is **GRANTED**. The report in question was issued by Natchitoches Parish EMS and contains a statement regarding the speed of the collision:

"Called to assist this 41-year-old w/m who was rider of motorcycle that broadsided an 18-wheeler at high speed." Record Document 62, Exh. 3. Medical records are hearsay, but fall within an established exception to the hearsay rule because they are business records made in the regular course of business. Rule 803(6). However, Rule 803(6)'s exception only applies to records "made at or near the time by, or from information transmitted by, a person with knowledge." Id. The report at issue, which indicates that EMS technicians arrived at the collision scene after the wreck occurred, does not indicate the source of the information regarding the speed of the collision. Neither the eyewitnesses nor the responding officer have testified that they spoke with an EMS technician regarding the collision speed. Accordingly, the Court concludes that the statement which Defendants seek to introduce is hearsay within hearsay and inadmissible as such. See Rules 801(c) and 803(6).

Defendants cite Newton v. Ryder Transp.Servs., Inc., 206 F.3d 772 (8th Cir. 2000), in which the contents of a police accident report were found admissible because the information in the report qualified as a hearsay exception under Rule 803(5). Rule 803(5), another recognized exception to Rule 802, permits the introduction of a witness' recorded recollections "concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly." Defendants urge this Court to defer its ruling on this motion, implying that the emergency room doctor who treated Mr. Brosette, Dr. Fred Sullivan, adopted the report issued by EMS. Defendants present no evidence in support of this theory, and the Newton case is not analogous to the situation at bar. In Newton, the

police sergeant who prepared the accident report at issue testified that the information contained in the report was provided to him by the plaintiff, and that there were no other witnesses to the accident. Id. at 775. Unlike the defense in the Newton case, Defendants in the instant case present no evidence regarding the identity of the witness whose impressions are reflected in the ambulance run report. Accordingly, the ambulance run report does not fit within Rule 803(5)'s ambit and is inadmissible hearsay within hearsay.

**11 & 12. Any evidence, statement, or inference regarding: (1) the previous marriages of Plaintiff Lisa Brosette and the Deceased, other than the fact that such marriages existed; and (2) the allegation that the Deceased and Plaintiff Lisa Brosette began dating one another while the two were separated from previous spouses**

Plaintiffs' motions numbered 11 and 12 are **GRANTED**. Prior to her marriage to Kenneth Brosette, Lisa Brosette was married twice, with three children from these previous marriages. Prior to his marriage to Lisa, Kenneth Brosette was married once, with one child born of that marriage. Because Mr. and Mrs. Brosette raised children from their previous marriages together as a single family unit, the Plaintiffs do not seek to exclude evidence that the two were previously married to other people.

However, Defendants have listed the previous spouses of both Mr. and Mrs. Brosette as witnesses for the defense, and plan to introduce expert testimony regarding the quality and characteristics of Mrs. Brosette's marriages prior to her marriage to Mr. Brosette. Specifically, the defense contends this is "relevant to show the value that both Lisa and Kenneth placed on the sanctity of marriage as they began dating while married

to other spouses," to establish that Lisa and Kenneth's marriage was characterized by a "cycle of violence," and to demonstrate that Mrs. Brosette was "preparing to leave her husband."

As Plaintiffs observed in their Reply: "In other words, Defendants intend to use evidence of the Brosette's past divorces [and dating history] to show that they would have divorced each other." Record Document 93, ¶ V. Each of Defendants' statements reveals that their intended use of this evidence renders it inadmissible under Rule 404, which provides that "[e]vidence of a persons's character or a train of character is not admissible for the purpose of showing action in conformity therewith on a particular occasion. Rules 404. Defendants will not be permitted to introduce evidence that the Brosettes were previously divorced or unfaithful for the purposes of establishing that they were unfaithful to or planned to divorce one another.

Nor is such evidence admissible for the purposes of impeaching the overall veracity of Mrs. Brosette's testimony. Defendants argue that the evidence of Mrs. Brosette's prior marriages is probative of the issue of Mrs. Brosette's credibility. Defense counsel asked Mrs. Brosette during her deposition whether she had been accused of adultery prior to the affair she admitted having with Jeff Cooper, and she replied that no one other than Kenneth Brosette had so accused her. See Record Document 86, ¶ 11, n.36-37. Because Mrs. Brosette's first husband sought a divorce based on part on allegations of adultery, Defendants claim that Mrs. Brosette's denial during her deposition on this issue raises general credibility questions. Id. Plaintiffs aver, and the defense does not deny, that defense counsel framed the question regarding adultery in the midst of an extensive

interrogation or Mrs. Brosette regarding her marriage to Mr. Brosette.  Record Document 93, ¶ V.  Plaintiffs further represent that neither Plaintiffs' counsel nor Plaintiffs understood the question to encompass Mrs. Brosette's previous marriages.  Id.  The Court finds this to be a plausible, understandable interpretation of defense counsel's question, and believes that Mrs. Brosette attempted to respond to that question truthfully and in good faith.  Id.  Accordingly, this evidence is not admissible for the purposes of impeaching Mrs. Brosette's credibility.

13. **Any evidence, statement, or inference regarding the pen pal correspondence of Plaintiff Lisa Brostte and Henry Taylor**

Plaintiffs' motion numbered 13 is **GRANTED**.  Henry Taylor is the incarcerated son of a friend.  See Record Document 62, ¶ 13.  Plaintiff began writing him upon his mother's suggestion.  Id.  Mrs. Brosette had not met Taylor prior to his incarceration.  See id.  Although courts routinely admit evidence of a spouse's infidelity prior to the death or injury-causing event in connection with loss of consortium claims, Defendants present this Court with no evidence suggesting that the pen pal correspondence between Mrs. Brosette and was romantic in tenor.  Defendants point to the fact that Dr. Bienvenu, Plaintiff's marriage counselor, documented that Mrs. Brosette's relationship with Mr. Taylor upset her husband.  See Record Document 86, ¶ 13.  However, Dr. Bienvenu's opinion that Mr. Brosette upset was does not amount to evidence that Plaintiff was involved in any sort of emotional infidelity relevant to her claim for loss of consortium.  Accordingly, evidence of Mrs. Brosette's correspondence with Taylor is excluded as irrelevant under Rule 401.

14. **Any evidence, statement, or inference regarding *In re Kenneth Wayne***

***Brossette*, 04-BK-81460, Western District of Louisiana Bankruptcy Court, Alexandria Division**

Plaintiffs' motion numbered 14 is **DENIED in part**. The Brosette's bankruptcy petition contains sworn statements regarding the couple's income for the years 2002-04. Plaintiffs concede that such information is directly relevant to Lisa Brosette's claim for lost earning capacity as a result of her husband's death. However, Plaintiffs argue that Defendants need not rely on income information reflected in the bankruptcy petition because Plaintiffs' tax returns and other records have been produced as evidence of the Brosettes' prior income. As such, they argue that this evidence should not be admitted under Rule 403 because it is both cumulative and potentially prejudicial to Plaintiffs.

Defendants aver, and Plaintiffs do not deny, that certain of Plaintiffs' witnesses have alluded to the Brosettes' bankruptcy. Accordingly, any information contained in the sworn bankruptcy petition is information which could conceivably be used as impeachment evidence. This Court therefore concludes that a ruling at this stage that such evidence is inadmissible for the purposes of impeachment could potentially inhibit the defense's ability to cross examine Plaintiffs' witnesses. Notwithstanding, Plaintiffs may reurge their objection to the introduction of such evidence at trial. **Before mentioning or introducing evidence regarding the Brosettes' bankruptcy, and out of the presence and hearing of all prospective jurors and the jurors ultimately selected in this case, Defendants shall notify the Court** so that Plaintiffs have opportunity to object to the introduction of such evidence.

In addition, Defendants will not be permitted to introduce evidence regarding the

amount of the Brosettes' bankruptcy garnishment, which reflects the bankruptcy court's calculation of the Brosettes' disposable income.  However, Defendants have not cited any authority supporting their conclusion that such information is relevant in a wrongful death suit.

Nor will Defendants be permitted to introduce evidence of the bankruptcy for the purpose of suggesting that the bankruptcy may have caused marital problems for the Brosettes, as Defendants present this Court with no evidence suggesting that the bankruptcy proceedings diminished Mrs. Brosette's love and affection for her husband.

15. **Any evidence, statement, or inference regarding an extra-marital affair between Plaintiff Lisa Brosette and Jeff Cooper**

Plaintiffs' motion numbered 15 is **DENIED**.  Evidence that Plaintiff was involved in an extra-marital affair with Jeff Cooper prior to her husband's death is probative with respect to Mrs. Brosette's loss of consortium claim.  Courts routinely admit evidence of a spouse's infidelity prior to the death or injury-causing event in wrongful death actions and other types of suits involving loss of consortium claims.  See Bridges v. Rowan Drilling, No. 84-572, 1986 WL 14422, at *3 (E.D. La. Dec. 11, 1986) (dismissing the plaintiff's loss of consortium claim in light of evidence of the plaintiff's extra-marital affair and general marital discord); Hiatt v. United States, 910 F.2d 737, 743(11th Cir. 1990) (affirming district court's admission of evidence of infidelity as "probative of the extent of survivor's non-economic loss as a result of the wrongful death" under Florida law).

16. **All pleadings from *Brosette v. Brosette*, No. 76,857-B, 10th Judicial District Court, Natchitoches Parish, Louisiana**

Plaintiffs' motion numbered 16 is **DENIED**. Mr. and Mrs. Brosette eventually reconciled and Mrs. Brosette dismissed her divorce petition. In light of the reconciliation, Plaintiffs argue that evidence of the divorce proceedings should be excluded because they have limited probative value and because the evidence presents a substantial risk of prejudice.

The pleadings at issue include sworn statements documenting Mr. Brosette's physical abuse of Mrs. Brosette. The Brosette's marital problems are relevant to Mrs. Brosette's damage claims. In particular, the contents of Mrs. Brosette's petition for a restraining order and divorce petition are probative of the love, companionship, and society that Mrs. Brosette claims to have lost as a result of her husband's death.

17. **All exhibits listed by Defendants that have not been previously produced to Plaintiffs**

Plaintiffs' motion numbered 17 is **DENIED**. Defendants represent to this Court that the parties entered into an informal agreement to exchange exhibits and exhibit lists on Friday, September 26, 2008, when they planned to meet for an expert's deposition in Baton Rouge. See Record Document 97, ¶ VIII. Accordingly, Plaintiffs' motion is denied, although either party may move at trial to exclude any exhibits not received on or before September 30, 2008.

18. **A statement made by Ruby Jenson in the police accident report, which Plaintiffs contend constitutes hearsay**

Plaintiffs' motion numbered 18 is **DENIED**. Under Rule 703, "[f]acts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or

inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." Defendants assert that Ms. Jenson's hearsay statement, contained in the Police Accident Report, should be disclosed to the jury because four experts (including certain of Plaintiffs' experts) expected to testify in this case relied upon it in rendering their opinion, and the value of the evidence is not outweighed by any prejudicial effect. After rulings on the pending Daubert motions issue and the parties have re-filed their witness lists, Plaintiffs may reurge this objection.

### 19. The lay opinion of Kevin Burton regarding fault

Plaintiffs' motion numbered 19 is **GRANTED**. Mr. Burton, a lay witness to the collision, opined in his deposition testimony that the Swift Driver did not do anything wrong. Defendants argue that Mr. Burton should be permitted to testify as to this ultimate question of fault. Federal Rule of Evidence 701, which governs lay opinions, provides that such opinions are admissible when they are "(1) rationally based on the perception of the witness, (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (3) not based on scientific, technical, or other specialized knowledge." The comments to Rule 701 explain that the type of opinion evidence contemplated by the Rule "relates to the appearance of persons or things, identify, the manner of conduct, competency of a person, degrees of lightness or darkness, sound, size, weight, and distance, and other items that cannot be described factually in words without using inferences." Asplundh Mfg. Div. V. Benton Harbor Eng'g, 57 F.3d 1190 (3d Cir. 1995) (citations omitted). The Fifth Circuit has held that "lay opinion expresses a conclusion

drawn from observations in circumstances where it is impractical, if possible at all, to recount the observed 'factual' components of the opinion. The common illustrations are an expression of opinion by a lay observer of a car's speed or a person's expression or emotional state." United States v. Carlock, 806 F.2d 535, 548 (5th Cir. 1986). Rule 701 permits lay opinion testimony regarding determinations of fact, not mixed questions of law and fact, such as the question of whether a party acted negligently. Thus, in this case, Mr. Burton shall be permitted to share his opinions with the jury regarding the truck and the motorcycle's respective rates of speed, the safety of the road conditions, visibility, etc. However, he will not be permitted to opine at trial regarding the reasonableness of either party's actions or the ultimate question(s) of fault.

20. **Any arrests and convictions of the Deceased**

Plaintiffs' motion numbered 20 is hereby **GRANTED.** Defendants stated in their opposition brief that they did not oppose Plaintiffs' motion, except as it relates to Mr. Brosette's prior conviction for battery in connection with his beating a Greenpeace protestor with a piece of rebar. This conviction was entered after Mr. Brosette pled guilty under to aggravated battery. Plaintiffs represent that the conviction is more than 10 years old and was expunged under Article 893. Record Document 93, ¶ XI. Defendants state that they intend to use this evidence to establish "Mr. Brosette's anger management and propensity for violence," "the nature of the marital relationship (and alleged damages)," and "also potentially another element in the constellation of factors that help a juror determine Mr. Brosette's state of mind when he drove his motorcycle in such a dangerous and reckless maneuver on the day of his accident." Record Document 97, ¶ XI. These intended uses

are forbidden under Rule 404.

B.  **Defendants' Separately Filed Motions in Limine**

**64. Any evidence, reference, or argument concerning Defendant David Hendricks' prior arrests, alleged desertion, and discharge from the navy, and any evidence, reference, or argument concerning Defendant David Hendricks' 1989 conviction of theft and larceny**

Defendants' motion (Record Document 64) is hereby **DENIED**. Although this evidence is not independently admissible, evidence of Mr. Hendricks 1989 conviction and discharge from the navy is relevant and admissible on cross-examination under Rule 608(b) because Mr. Hendricks lied about his conviction and discharge when he applied for employment with Swift Transportation.

Plaintiffs present the Court with Mr. Hendricks' employment application and deposition testimony. Record Document 73, Exhs. 1 &2. Mr. Hendricks applied for employment with Swift Transportation on May 25, 2004. Record Document 73, Exh. 1, Employment Application. The application required Mr. Hendricks to indicate whether he had ever been convicted of a crime or served in the military. Id. Mr. Hendricks answered no to both questions. Id. However, Mr. Hendricks testified in his deposition that he joined the navy in February of 1985, was arrested for desertion in October of 1986, and, as a result, he was convicted and spent 60 days in the brig. Id., Exh. 2, Hendricks Dep. 7/28/2008, 14:5-9 & 16-25, 15:1-3).

Evidence that Mr. Hendricks lied on his employment application is admissible under Fed. R. Evid. 608(b)(1). The act of lying on an employment application is among those

acts that may be inquired into on cross-examination pursuant to Rule 608(b)(1). See United States v. Girdner, 773 F.2d 257, 260-61 (10th Cir. 1985); Schmidt v. Medicalodges, Inc., 523 F.Supp.2d 1256, 1259-60 (D. Kan. 2007); Hahn v. Minnesota Beef Indus., Inc., 2002 WL 32658476, at *1 (D. Minn. May 29, 2002); Davidson Pipe Co. v. Lanventhol and Horwath, 120 F.R.D. 455, 462-63 (S.D.N.Y. 1988).

Because evidence that Mr. Hendricks was convicted of desertion is offered solely for the purpose of establishing that he made false statements on his employment application, the requirements of Rule 609 are inapplicable. See United States v. Norton, 26 F.3d 240 (1st Cir. 1994); Schmidt, 523 F. Supp. 2d at 1260.

**65. Any evidence, reference, or argument concerning Defendant David Hendricks' sexual orientation and MySpace page**

Plaintiffs indicated that they do not oppose this motion. See Record Document 86, ¶ 1. Accordingly, Defendants' motion (Record Document 65) is hereby **DENIED as moot**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith. **THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 29th day of October, 2008.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE